STATE OF NORTH CAROLINA v. JIMMY L. EVERETTE

No. 23

(Filed 10 October 1973)

1. Criminal Law § 164— failure to move for nonsuit in trial court — consideration on appeal

Though it was not clear from the record whether defendant actually made a motion to dismiss or a motion for judgment as in the case of nonsuit, the court reviewed the sufficiency of the State's evidence under the provisions of G.S. 15-173.1 as if the proper motion had been made in the trial court.

2. Homicide § 21— first degree murder — death by shooting — sufficiency of evidence

In passing upon the sufficiency of the State's evidence to carry the case to the jury, the trial court in a murder prosecution was not required to consider defendant's testimony concerning self-defense, but properly submitted the case to the jury where the State's evidence tended to show that defendant entered an eating establishment with a pistol in his hand, that he told deceased to stand up and that he was going to kill him, that he shot deceased twice, walked over to him and said "I hope you dead," that deceased died as a result of the bullet wounds, and that on several occasions prior to the shooting defendant said he was going "to get" the deceased.

---

State v. Everette

---

**3. Criminal Law § 99— questioning of witness by court — no error**

The trial court in a murder case did not express an opinion in questioning defendant and one of defendant's witnesses in an effort to clarify their testimony, nor did the court err in instructing a witness to speak louder.

**4. Criminal Law § 162— failure to object to evidence — failure to move to strike — consideration on appeal**

Though defendant made no objections to the admission of documents introduced by the State or to questions asked by the State, made no motions to strike answers to those questions, but did bring forward on appeal assignments of error based on admission of the documents in the trial court, the Supreme Court considered the assignments of error and found them to be without merit.

**5. Criminal Law § 163— objection to instructions — made for first time on appeal**

Where the trial court correctly and adequately defined murder in the first degree, murder in the second degree and voluntary manslaughter, fully instructed the jury on defendant's right of self-defense, applied the law to the facts, and finally inquired if defendant desired any further instructions, defendant could not complain on appeal that an insufficient amount of time was devoted to the instructions on second degree murder and manslaughter, since he did not request additional instructions; furthermore, defendant's assignment of error to the charge was broadside and ineffectual.

APPEAL by defendant from *Hall, J.*, at the 22 January 1973 Session of DURHAM Superior Court.

On an indictment proper in form, defendant was tried and convicted of murder in the first degree of Norwood T. Bass, alias Pumpkin Bass. Defendant appeals from a judgment imposing a sentence of life imprisonment.

The State presented three witnesses who testified that on 27 March 1972 around 5 p.m. they were in a food establishment known as the Red Hen in Durham, North Carolina. Their testimony tends to show that the deceased and Herbert Blue were seated in a booth in the Red Hen when defendant walked in with a pistol in his hand, told the deceased to stand up, and told him he was going to kill him. As the deceased stood up, defendant shot him twice. Defendant also shot Blue once. Deceased then ran to the back of the Red Hen and fell. Defendant walked over to him and said "I hope you dead," and then ran out of the Red Hen.

These three eyewitnesses also testified that prior to the shooting the deceased did not reach into his coat as if to get a

gun, and that the only thing he had in his hand when he was shot was a grape soda drink.

B. W. Burch, the investigating officer of the Durham Police Department, found no weapon on the deceased's person. Another police officer, W. Y. Poole, testified that he had known both the deceased and defendant for some time prior to 27 March 1972, and that the deceased shot defendant in the arm about a year before the alleged shooting in the Red Hen. Officer Poole further testified that on several occasions—the latest being about a week before the date of the alleged shooting in the Red Hen—defendant said that he was going "to get" the deceased.

Dr. John T. Daly, admitted by defendant's counsel to be a medical expert, testified that the deceased died as a result of two bullet wounds, one in the chest and one in the abdomen, either of which could have been fatal.

Defendant, testifying in his own behalf, stated that about a year prior to the shooting in the Red Hen the deceased shot defendant in the arm. He further testified that two days before the shooting in the Red Hen someone took a shot at him, and the next morning the deceased called defendant on the telephone and said he would not miss him the next time. As a result of these alleged shootings, defendant was afraid of the deceased and started carrying a pistol. On 27 March 1972, the day following the alleged telephone call from the deceased to defendant, defendant went into the Red Hen not knowing that the deceased was inside. Defendant saw deceased start reaching into his coat as if to get a gun. Without waiting to see if the deceased actually had a gun or "was just going through the motion," defendant started shooting. Deceased immediately pulled Blue in front of him, and defendant accidentally shot Blue. Defendant denied that he said "I hope you dead," or that he told Officer Poole that he was going "to get" the deceased.

Blue, testifying for the defendant, stated that he did not see a gun in the deceased's hand, but that deceased had "reached for his side." Blue also testified that after defendant had fired one shot, the deceased grabbed Blue and used him "as a shield," and that this was how he was shot.

*Attorney General Robert Morgan and Associate Attorney Ann Reed for the State.*

*Felix B. Clayton and Raymond Sitar for defendant appellant.*

MOORE, Justice.

Defendant first assigns as error the failure of the trial court to direct a verdict for defendant at the close of the State's evidence, at the close of defendant's evidence, and at the close of all the evidence. In support of this assignment, defendant summarizes a portion of the evidence that stresses his plea of self-defense and contends that because of this evidence the State did not meet the burden of proof required for submission of the case to the jury.

[1]  In a criminal case the proper motion to test the sufficiency of the State's evidence to carry the case to the jury is a motion to dismiss the action or a motion for judgment as in the case of nonsuit, pursuant to G.S. 15-173. *State v. Evans,* 279 N.C. 447, 183 S.E. 2d 540 (1971); *State v. Cutler,* 271 N.C. 379, 156 S.E. 2d 679 (1967). The sufficiency of the evidence for the State in a criminal case is reviewable upon appeal without regard to whether a motion has been made pursuant to G.S. 15-173 in the trial court. G.S. 15-173.1. From the record in this case it is not clear whether defendant actually made any motion. However, we review the sufficiency of the State's evidence under the provisions of G.S. 15-173.1 as if the proper motion had been made under G.S. 15-173. On such motion the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve and do not warrant nonsuit. Only the evidence favorable to the State is considered, and defendant's evidence relating to matters of defense or defendant's evidence in conflict with that of the State is not considered. *State v. Henderson,* 276 N.C. 430, 173 S.E. 2d 291 (1970); 2 Strong, N.C. Index 2d, Criminal Law § 104 (1967). To withstand a judgment as of nonsuit there must be substantial evidence of all material elements of the offense charged. Whether the State has offered such substantial evidence presents a question of law for the trial court. *State v. Evans,* 279 N.C. 447, 183 S.E. 2d 540 (1971); *State v. Allred,* 279 N.C. 398, 183 S.E. 2d 553 (1971).

The essential elements of murder in the first degree are premeditation, deliberation, and malice. *State v. Moore,* 275 N.C. 198, 166 S.E. 2d 652 (1969).

[2]  In this case the State offered evidence which tends to show that defendant entered the establishment known as the Red Hen on 27 March 1972 with a pistol in his hand, told deceased to stand up, and told him he was going to kill him. He then shot deceased twice, and deceased died as a result of these bullet wounds. The State's evidence further tends to show that after deceased fell, defendant walked over to him and said "I hope you dead," and that on several occasions prior to the shooting defendant said he was going "to get" the deceased. From this evidence the jury could reasonably infer that defendant killed the deceased and that the killing was committed with premeditation, deliberation, and malice.

In passing upon the sufficiency of the State's evidence to carry the case to the jury, the trial court in the present case was not required to consider defendant's testimony concerning self-defense. Therefore, the court properly refused to enter judgment as of nonsuit for defendant.

[3]  Defendant next contends that the court violated G.S. 1-180 by asking defendant certain questions. On direct examination defendant testified: "When I walked into the Red Hen, Blue and Bass were sitting together. When he seen me he started getting up and both of us were reaching—he pulled Blue in front of him and I just started shooting, that is how I hit him and that is how I hit Blue." The court then asked defendant: "Who was holding Blue in front of him?" Defendant answered: "The deceased. I didn't intend to hit Blue. When I walked in our eyes met and he got up and began reaching under his coat. I didn't wait to see if he had a gun or not, but he was just going through the motion." The court then asked: "The deceased is alleged to be Bass, isn't it?" At another point during the trial defendant's witness Blue testified: "Bass grabbed me after the first shot trying to use me as a shield I guess." The court asked Blue: "Who was it that grabbed you?" Obviously, in asking these questions the court simply meant to clarify the facts. Nothing in the questions would indicate to the jury that the judge had any opinion as to the guilt or innocence of defendant. If the court questions a witness only to clarify the witness's testimony or to promote a proper understanding of the case, such questions do not amount to an expression of

opinion. *State v. Freeman,* 280 N.C. 622, 187 S.E. 2d 59 (1972) ; *State v. Colson,* 274 N.C. 295, 163 S.E. 2d 376 (1968). Defendant also contends that the court erred in telling the witness Blue: "Speak out. She has to record your answer." This statement was simply an effort by the court to get the witness to speak louder. *State v. Allen,* 283 N.C. 354, 196 S.E. 2d 256 (1973). These contentions are without merit.

[4]   Defendant brings forward four assignments of error based on the admission of certain documents introduced by the State and the answers to certain questions asked by the solicitor. An examination of the record discloses that defendant did not object to the admission of the documents or to the questions that defendant now contends were improper, and that defendant made no motions to strike any of the answers. Ordinarily, failure to object in apt time to incompetent testimony is regarded as a waiver of the objection, and its admission is not assignable as error unless the evidence is forbidden by statute. If the testimony is incompetent, objection thereto should be imposed at the time the question is asked, and if no objection was made to the question when asked, a motion to strike the answer should be made. *State v. Lewis,* 281 N.C. 564, 189 S.E. 2d 216 (1972) ; *State v. Blackwell,* 276 N.C. 714, 174 S.E. 2d 534 (1970) ; 1 Stansbury's N. C. Evidence, Brandis Rev. § 27 (1973) ; 7 Strong, N. C. Index 2d, Trial § 15 (1968).

Even though no objections were made to the admission of the documents or to the questions asked by the State, and no motions were made to strike the answers to such questions, in view of the serious nature of this case we have carefully examined each assignment and find them to be without merit.

[5]   Defendant finally contends that the court erred in its charge to the jury in that "little explanation was devoted to the lesser included charges of second degree murder and manslaughter." Defendant does not contend that the court failed to charge the jury on the lesser included offenses of second degree murder and manslaughter, nor does he contend that the instructions as given were incorrect. Rather he simply contends that the "shortness of the time" devoted to the instructions on the lesser included offenses could have caused the jury to forget those portions of the charge when deliberations began. The court in the charge correctly and adequately defined murder in the first degree, murder in the second degree, and voluntary manslaughter, and fully instructed the jury on defendant's

right of self-defense. In the final mandate to the jury, the court applied the law to the facts in the case and instructed the jury that it could return one of four verdicts: Guilty of murder in the first degree, guilty of murder in the second degree, guilty of voluntary manslaughter, or not guilty. The court then inquired if defendant desired any further instructions. Defendant's counsel replied: "No, your Honor. I think that it was a very fine charge." The presiding judge in his charge to the jury must declare and explain the law arising on the evidence relating to each substantial feature of the case. *State v. Brady*, 236 N.C. 295, 72 S.E. 2d 675 (1952); G.S. 1-180. When the trial judge has instructed the jury correctly and adequately on the essential features of the case but defendant desires more elaboration on any point or a more detailed explanation of the law, then he should request further instructions. Otherwise, he cannot complain. *State v. Brooks*, 228 N.C. 68, 44 S.E. 2d 482 (1947); *State v. Gordon*, 224 N.C. 304, 30 S.E. 2d 43 (1944); *State v. Hendricks*, 207 N.C. 873, 178 S.E. 557 (1935); 7 Strong, N. C. Index 2d, Trial §§ 33, 38 (1968). Neither the exception, nor the assignment of error, nor the brief, calls attention to any particular statements or omissions in the charge. All are broadside and are not sufficient to draw into focus any assigned error of law. *State v. Wilson*, 263 N.C. 533, 139 S.E. 2d 736 (1965); *Clifton v. Turner*, 257 N.C. 92, 125 S.E. 2d 339 (1962); *State v. Stantliff*, 240 N.C. 332, 82 S.E. 2d 84 (1954); 1 Strong, N. C. Index 2d, Appeal and Error § 31 (1967). This assignment is without merit.

Defendant has had a fair trial, free from prejudicial error. The verdict of the jury is fully supported by the evidence. In the record we find no basis for a new trial.

No error.