State v. McKinney

---

STATE OF NORTH CAROLINA v. JIMMY McKINNEY

No. 7429SC846

(Filed 18 December 1974)

1. Narcotics § 4— sale of "THC" — sufficiency of evidence
    The State's evidence was sufficient for the jury in a prosecution upon two charges of distribution of the controlled substance tetrahydrocannabinol where it tended to show that defendant sold a white substance which he represented to be "THC" to two different buyers, the first buyer swallowed a pinch of the substance, became dizzy, was hospitalized and had hallucinations for a day, a doctor testified that the first buyer was under the influence of a hallucination drug, that tetrahydrocannabinol could have caused the symptoms he observed, and that "THC" is "a substance similar to marijuana like drugs," and the second buyer became dizzy and sick after he tasted the substance he purchased from defendant.

2. Narcotics § 3— medical testimony — person under influence of drug — cause of symptoms
    In a prosecution for distribution of tetrahydrocannabinol, a medical witness was properly allowed to give his opinion that a State's witness was under the influence of a hallucination drug on the day after the witness tasted a substance purchased from defendant and to testify that a sufficient quantity of tetrahydrocannabinol could have caused the symptoms he observed.

**3. Narcotics § 4.5— instructions equating tetrahydrocannabinol and "THC"**
   The trial court did not err in charging the jury that tetrahydrocannabinol and "THC" are the same thing since a medical expert testified that the abbreviation "THC" represents "a substance similar to marijuana like drugs," and the dictionary defines tetrahydrocannabinol as a highly active constitutent of cannabis indica and defines cannabis indica as marijuana.

APPEAL by defendant from *Martin (Harry C.), Judge,* April 1974 Session of McDOWELL County Superior Court. Heard in the Court of Appeals 21 November 1974.

Defendant, a 16-year-old school boy, was charged in two separate bills of indictment with unlawfully, wilfully and feloniously selling and distributing a controlled substance, *i.e.*, tetrahydrocannabinol, which is included in Schedule VI of the North Carolina Controlled Substances Act. The defendant pleaded not guilty to both charges.

The evidence for the State disclosed that the defendant, on two separate nights, December 9 and 10, 1973, sold what was represented to be "THC." In each instance, the buyer, a 15-year-old school boy, working after school, testified that he had asked for "THC" and the defendant had represented and told them that that was what he was selling. Neither purchaser had ever seen "THC" before.

In the first instance, the buyer, Franklin, bought a small plastic bag of the substance for $10.00 and placed a pinch, about one-fourth of a thimbleful, of the substance in his mouth and swallowed it. He testified it was white and looked like sugar but tasted bitter. He threw the remainder in the trash can as he was scared to have it with him. Before doing so, he showed it to fellow schoolmate and worker, Peppers. Fifteen to twenty minutes later, he became so dizzy that he did not know what he was doing. He had hallucinations and was taken to a doctor who put him in the hospital where he remained for two weeks. He had hallucinations for about one day after taking the "THC."

The buyer in the second instance, Peppers, testified that he had tasted the same substance sold to Franklin. He testified the substance was white, like sugar crystals, and had a bitter taste. In about 30 or 45 minutes after tasting it, he started getting dizzy and sick but continued at his work until 10:00 p.m. when he went home and to bed. The next night, he also purchased some "THC" from the defendant for $10.00. He did this at the

request of some of his friends and took it to school the next day and gave it to other boys.

A Dr. Ellis (an admitted medical expert) testified that he had examined and treated Franklin the day following the night he had allegedly ingested the substance. At that time Franklin was completely incoherent regarding time, place and person and in the doctor's opinion was acutely psychotic. It was Dr. Ellis's opinion that he was under the influence of medication or drugs of some type, "most likely a hallucination drug." His testimony was that during the examination, Franklin "talked about horns growing out of his head and he was hearing bells and said he couldn't hear anything else." The doctor further testified that tetrahydrocannabinol can be an hallucinogenic drug and if Franklin had had a sufficient quantity of it it could have caused the symptoms he observed. He did not see Franklin after he went to the hospital. He further testified that he was familiar with the abbreviation "THC" and that it was "a substance similar to marijuana like drugs."

At the end of the State's case, defendant's motion for judgment as of nonsuit was denied whereupon the defendant took the stand in his own behalf. He denied all the charges against him asserting that he had never sold nor possessed any drugs.

From a verdict of guilty on both charges and a judgment sentencing the defendant to not less than one nor more than three years, the defendant appealed.

*Attorney General James H. Carson, Jr., by Associate Attorney Raymond L. Yasser for the State.*

*Story & Hunter by C. Frank Goldsmith, Jr., for the defendant appellant.*

CAMPBELL, Judge.

The defendant was being tried for the unlawful sale and distribution of a drug, tetrahydrocannabinol. This raises the question as to what this drug is. Stedman's Medical Dictionary Unabridged Lawyers' Editon (1961) defines tetrahydrocannabinol as, "A highly active constitutent of *Cannabis indica.*" Cannabis indica in turn is defined as, "Indian hemp; hashish; marijuana; marihuana; the dried flowering tops of the pistillate plants of *Cannabis sativa,* gathered before the fruits are developed. Narcotic, sedative, analgesic, and aphrodisiac."

The defendant contends that the trial court was in error in failing to dismiss the action and enter a judgment as of nonsuit.

In a criminal case the proper motion to test the sufficiency of the State's evidence to carry the case to the jury is a motion to dismiss the action or a motion for judgment as in the case of nonsuit pursuant to G.S. 15-173. The sufficiency of the evidence for the State in a criminal case is reviewable upon appeal without regard to whether a motion has been made pursuant to G.S. 15-173 in the trial court. G.S. 15-173.1. From the record in this case, it appears that the defendant did not make any motion at the conclusion of all the evidence. However, we review the sufficiency of the State's evidence under the provisions of G.S. 15-173.1 as if the proper motion had been made under G.S. 15-173. On such motion the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable intendment thereon and every reasonable inference therefrom. Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve and do not warrant nonsuit. All of the evidence favorable to the State is considered, and defendant's evidence relating to matters of defense or defendant's evidence in conflict with that of the State is not considered. To withstand a judgment as of nonsuit there must be substantial evidence of all material elements of the offense charged. Whether the State has offered such substantial evidence presents a question of law for the trial court. *State v. Everette*, 284 N.C. 81, 199 S.E. 2d 462 (1973).

[1]    Applying this test, we think the evidence sufficient to carry the case to the jury.

[2]    Dr. Ellis was competent to testify concerning facts within his knowledge based upon his actual treatment of Franklin and to render his opinion as to what Franklin was suffering from and for which he was treated. His testimony in this regard was entirely competent.

[3]    Defendant also assigns as error that portion of the charge of the judge to the jury wherein the judge equated tetrahydrocannabinol and "THC" as being the same thing. The defendant asserts that no witness testified to the fact that the two were the same. We disagree. Dr. Ellis testified that he was familiar with the abbreviation "THC" and that that abbreviation represents "a substance similar to marijuana like drugs." We have heretofore pointed out that the dictionary definition of tetra-

hydrocannabinol defines it as a highly active constitutent of cannabis indica and that cannabis indica in turn is marijuana. When we apply the mathematical axiom that things equal to the same thing are equal to each other, we come up with the answer that "THC" and tetrahydrocannabinol are one and the same.

We have considered the other assignments of error brought forward by the defendant, and we conclude that the defendant had a fair trial free of prejudicial error.

Under the defense presented, this case presented a question for the twelve, and they found against the defendant.

No error.

Chief Judge BROCK and Judge HEDRICK concur.