STATE OF NORTH CAROLINA v. ODELL HOCKETT

No. 405A83

(Filed 6 December 1983)

1. **Criminal Law § 66.1 — identification testimony — credibility — question for jury on weight to give testimony**

Defendant's contention that the court should review its previous decisions and change the rule concerning identification testimony to require the trial

court to determine, on a case-by-case basis, whether other conflicting evidence as to identification would require the court to remove the question from the jury is without merit. The trial court cannot invade the province of the jury and make case-by-case rulings on the credibility of witnesses and the weight to be given their testimony.

**2. Criminal Law § 102.1 — prosecutor's remarks in argument to jury — failure to sustain objection — no abuse of discretion**

　　In a prosecution for a first degree sexual offense and armed robbery, there was no abuse of discretion in the trial court's refusal to sustain defendant's objections to two of the prosecutor's arguments to the jury.

**3. Criminal Law § 119 — request for instructions — failure to give — error**

　　In a prosecution for a first degree sexual offense and armed robbery, the trial court committed reversible error by refusing to answer questions asked by the jury having to do with the effect of a threat of harm or force with a deadly weapon where the questions gave a clear indication that the jury was uncertain as to the difference in the elements between first degree sexual offense and second degree sexual offense and between robbery with a dangerous weapon and common law robbery. G.S. 15A-1232 and G.S. 15A-1234.

APPEAL by defendant as a matter of right from the judgments of *Farmer, Judge,* entered at the 28 March 1983 Criminal Session, CUMBERLAND County Superior Court. Defendant was charged in indictments, proper in form, with first degree sexual offense and armed robbery. The jury returned verdicts of guilty as to both charges and Judge Farmer imposed a sentence of life imprisonment as to the first degree sexual offense. We allowed defendant's motion to bypass the North Carolina Court of Appeals with respect to the conviction of robbery with a firearm, in which Judge Farmer imposed a sentence of fourteen (14) years to commence at the expiration of the life sentence imposed for the first degree sexual offense.

In relevant part, the evidence for the State tended to show the following: About 3:00 a.m. on 21 April 1982, Julia Underhill was working as the cashier at The Modern Mart Convenience Store on Ramsey Street in Fayetteville, North Carolina. At that hour she was outside the store cleaning the parking lot. There were present at that time Charlie and Rita Baxley (husband and wife). The Baxleys were sitting in their automobile. A car driven by a black male drove up to the gas pumps. He got out of his car and walked toward the store entrance, passing by Mrs. Baxley. The black male and Mrs. Underhill went into the store. Mr. and Mrs. Baxley left the parking lot.

After entering the store, the black male, later identified as the defendant, jumped over the counter to where Mrs. Underhill was standing and demanded all the money. He threatened to blow her brains out. Mrs. Underhill saw the man's hand in his pocket on what she determined was the handle of a gun. After removing the money from the cash register, he forced Mrs. Underhill to disrobe and perform oral sex on him. He was wearing no gloves and touched the counter and window with his hands.

After the defendant departed, the victim, Mrs. Underhill, called the police who arrived soon thereafter. Pursuant to their investigation, a paper towel containing semen was obtained, as were fingerprint lifts from the window. The semen was determined to be consistent with a broad category of persons which included defendant. The prints lifted proved not to be those of the defendant.

Later, when Mrs. Underhill talked with the detectives, she gave them a description of her assailant and helped construct a composite drawing of him. The technician assisting Mrs. Underhill had to use a black grease pencil in order to make the suspect's beard dark enough to satisfy her description since he did not have any foils or overlays of beards dark enough to suit her. When shown a photographic line-up including a picture of Hockett, Mrs. Underhill pointed him out but remarked that she could only be fifty percent sure he was the man since his hair style was different in the photograph. She identified Hockett at trial and described the man as having a close beard and a full, neat moustache. Several photographs of Hockett, taken at various times before and after April 1982, were introduced into evidence at trial by the defendant. They show him with different degrees of facial hair but none show a heavy beard on the side of his face. Hockett testified that his beard did not grow much on the side of his face. The photographs also show Hockett to have a relatively thin moustache which, according to Hockett and another witness, was the way his moustache always has appeared.

Mrs. Baxley testified that as the man passed her they exchanged smiles. She described him as having a beard close to the face, a full moustache, big white pretty teeth, and a big smile. About two months later she was shown a photographic line-up and at the direction of police officers attempted mentally to put a

beard on the subjects in the line-up. She picked Hockett's picture as being the man she saw go into the store that night. She also made an in-court identification of Hockett.

Defendant Hockett offered evidence through himself and others that his appearance had always been consistent with his appearance in the photographs introduced into evidence with regard to his moustache and lack of significant facial hair on the side of his face. He also offered evidence that he is missing his top front teeth and was without them in April 1982. Defendant presented additional testimony that he has never had any false teeth or dental plates.

Additional facts, which become relevant to defendant's specific assignments of error, will be incorporated into the opinion.

*Attorney General Rufus L. Edmisten by Assistant Attorneys General Grayson B. Kelley and Dennis P. Myers, for the State.*

*Assistant Public Defender John G. Britt, Jr., for the defendant.*

COPELAND, Justice.

Defendant brings forward and argues four assignments of error which he contends require a reversal and either a dismissal of the charges against him or a new trial. We conclude there must be a new trial because of the failure of Judge Farmer to answer a question asked by the jury relative to the legal effect of the presence or absence of a weapon.

[1] In the first assignment of error the defendant in effect is urging this Court to abandon several previous rulings. More specifically, the defendant asks us to hold that in cases where two witnesses, with ample opportunity to observe the defendant, provide positive in-court identifications of that defendant, the trial court should nevertheless remove the case from the province of the jury when there is some evidence which tends to show that the identifications were not accurate. In this case, the victim, Mrs. Underhill, not only made a positive in-court identification of the defendant, but she also testified to the fact that she had previously identified the defendant from a photographic line-up.

The uncontradicted evidence shows that she had ample opportunity to observe the defendant under well-lighted conditions. In addition, the witness Rita Baxley testified that the well-lighted conditions enabled her to clearly view the defendant. She also provided a positive in-court identification as well as a pre-indictment identification of the defendant from a photographic line-up.

Certainly there can be no great question as to whether there was sufficient evidence that the crimes in question were actually committed.

We stated in *State v. Green*, 296 N.C. 183, 189, 250 S.E. 2d 197, 201 (1978) that if the witness had a "reasonable possibility of observation sufficient to permit subsequent identification, . . . the credibility of the witness and the weight of his or her identification testimony is for the jury." (Quoting *State v. Wilson*, 293 N.C. 47, 235 S.E. 2d 219 (1977).) Again we considered this proposition of identification of a defendant in *State v. Turner*, 305 N.C. 356, 289 S.E. 2d 368 (1982), where in a unanimous opinion by Justice Britt, we restated the above mentioned general rule. The defendant concedes that this is the rule, but asks us to review our previous decisions and change the rule to require the trial court to determine, on a case-by-case basis, whether other conflicting evidence as to identification would require the court to remove that question from the jury. He advocates the application of this rule even when the witness had sufficient opportunity to observe the defendant. It seems that the defendant is asking us to promulgate a rule which would require the trial court to invade the province of the jury and make case-by-case rulings on the credibility of witnesses and the weight to be given their testimony. This we refuse to do. This assignment is without merit and is overruled.

[2] We next consider whether the trial court committed reversible error by overruling defendant's objections to the prosecutor's remarks in his argument to the jury. This contention encompasses defendant's next two assignments of error.

The record discloses that during the closing argument of defense counsel to the jury, he reviewed the evidence which the State had presented and then stated "none of us are safe if you can be convicted on something like that." Further, he indicated that the jury should "use the same standards you would apply to

any other citizen, the same standard you would want applied to yourself." In doing so, counsel for the defendant attempted to personalize the case and asked the jury to consider that they themselves were in danger of conviction of a crime if they convicted the defendant on the evidence which had been presented. In the district attorney's final argument, he commented on defense counsel's argument by stating:

> He just said that if two people witness something happening and come in the courtroom—you could be one of those persons, your husband, your wife—and tell what you saw, that that is not enough for twelve other people to base their decision on. That is saying that you are not believable.

Defendant objected to the prosecutor's argument on the grounds that it traveled outside the facts and law relevant to this case. The trial judge ruled that the district attorney could argue his contentions. Later the prosecutor, after referring to the rights of the defendant, further pointed out that:

> There are some other rights you should consider: the rights you have, the rights Julia Underhill has, the rights your family has, the right to be able to go to work somewhere and try to make an honest living.

Upon an objection by defense counsel, the trial judge admonished the prosecutor to argue the evidence, but refused to instruct the jury to disregard the prosecutor's statements.

We stated in *State v. Monk*, 286 N.C. 509, 515, 212 S.E. 2d 125, 130-131 (1975), speaking through Justice Huskins in a unanimous opinion, that "It is the duty of the prosecuting attorney to present the State's case with earnestness and vigor and to use every legitimate means to bring about a just conviction . . . Counsel for both sides are entitled to argue to the jury the law and the facts in evidence and all reasonable inferences to be drawn therefrom." See also: *State v. Craig*, 308 N.C. 446, 302 S.E. 2d 740 (1983). It is left to the trial judge's sound discretion to determine whether counsel has abused the wide latitude accorded him in the argument of hotly contested cases. We have determined that we will not review the judge's exercise of discretion unless there exists such gross impropriety in the argument as would likely influence the jury's verdict. *State v. Myers*, 299

N.C. 671, 263 S.E. 2d 768 (1980); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). We conclude that there was no such gross impropriety in the case before us and this assignment is overruled.

[3] In his fourth assignment of error defendant maintains that Judge Farmer committed reversible error by refusing to answer questions asked by the jury having to do with the effect of a threat of harm or force with a deadly weapon.

It is the duty of the trial judge to "declare and explain the law arising on the evidence relating to each substantial feature of the case." *State v. Everette*, 284 N.C. 81, 87, 199 S.E. 2d 462, 467 (1973). N.C. Gen. Stat. § 15A-1232 requires the trial court to "declare and explain the law arising on the evidence." In this case defendant agrees that the trial court did give adequate and proper instructions on the law and on the evidence in its charge to the jury. However, the defendant argues that the court erred in failing to give additional instructions to the jury in response to the jury's question as to the effect of a threat of harm with a dangerous weapon. N.C. Gen. Stat. § 15A-1234 provides that the judge *may* give appropriate additional instructions to "respond to an inquiry of the jury made in open court." We do not believe that the judge is required to repeat instructions which have been previously given to the jury in the absence of some error in the charge. We held in *State v. Dawson*, 278 N.C. 351, 365, 180 S.E. 2d 140, 149 (1971) that "needless repetition is undesirable and has been held erroneous on occasion."

In this case, after three hours of deliberation, the jury submitted a written request to the court. It read:

Is the threat of harm or force with a deadly weapon the same as actually having or using a weapon?

This is clearly a question asking for clarification on a point of law. Judge Farmer unfortunately and incorrectly interpreted the question as relating to a matter of fact "which the jury must decide." He indicated that the court could not answer the question. The jury foreman then restated the question thusly:

Well, what we are asking is, if an individual threatens another individual as to, I'll blow your head off or I'll shoot

you, by law, whether that individual actually has a gun or not, is he guilty as if he had a gun, if he did not have one by that threat?

We interpret the question to be "If one threatens to blow another's head off but does not actually have a gun — is he guilty to the same degree as if he did actually have a gun?". This is a clear indication that the jury had questions about the legal difference; i.e. the difference in the elements between first degree sexual offense and second degree sexual offense and between robbery with a dangerous weapon and common law robbery.

Judge Farmer refused to review the elements, stating as his reason that there were two separate charges involved in the case and the elements are different. It is true that the elements are different, but each offense has one thing in common, *i.e.* the possession and display of a dangerous or deadly weapon or the absence thereof, which determines whether an offender is guilty of the offense charged or a lesser degree of the offense.

Defense counsel asked the court to answer the question of the jury in the negative. This would have been a proper and correct response to the question as asked by the jury. Judge Farmer had correctly stated in his charge to the jury:

Second-degree sexual offense differs from first-degree sexual offense only in that it is not necessary for the State to prove beyond a reasonable doubt that the defendant employed or displayed a dangerous or deadly weapon.

It is obvious that the jury had some question as to whether the State had proved beyond a reasonable doubt that the perpetrator of this offense was armed with a dangerous or deadly weapon, and thus, they were inquiring as to the effect of such a finding upon their determination of guilt on the various offenses charged. The testimony indicated that the defendant had his hand in his pocket and the victim could see "the shape of a gun" but she could never see "the actual — I guess, you call it the body of the gun. I saw the handle with his hand around it."

After having given appropriate and correct instructions to the jury, the trial court was obviously reluctant to elaborate as to a portion of the charge without repeating the entire charge. The

court advised the jury that it should continue with its delibera-
tions, if possible, and try to recall the charge which had been
given. Judge Farmer further told the jury that if it had additional
questions the court would consider them, but would not go into
one part of the charge without giving the entire charge again.

We have said that "In determining the propriety of the trial
court's instructions to the jury, we must consider the instruction
[sic] in their entirety and not in detached fragments." *State v.
Howard,* 305 N.C. 651, 653-654, 290 S.E. 2d 591, 592 (1982). Re-
gardless of the unfortunate situation in which Judge Farmer was
placed, we must conclude that the trial court committed reversi-
ble error and a new trial must be had.

We feel that the trial court should have at least reviewed the
elements of the offenses if it was not going to directly answer
the question as defense counsel had requested. It is clear that the
jury did not understand the differences in the degrees of the of-
fenses and did not understand how the presence or absence of a
gun would affect the degree of guilt as to both offenses.

We hold that the failure of the trial court to answer the ques-
tions of the jury on an important point of law was prejudicial er-
ror and the conviction must be reversed and a new trial granted.

New trial.