STATE OF NORTH CAROLINA v. JEFFREY CHARLES MOORE

No. 76A93

(Filed 30 December 1994)

1. **Homicide § 503 (NCI4th)— first-degree felony murder— discharging firearm into property—victim shot outside house**

The trial court did not err in a first-degree murder prosecution which resulted in a felony murder conviction based on discharging a firearm into occupied property by denying defendant's motion to dismiss the felony murder charge where defendant had a violent and strained relationship with his girlfriend, who lived with her sister and her sister's boyfriend, Calvin Lineberger; after a fight defendant returned to the residence several times but his girlfriend refused to see him; the victim, defendant's girlfriend,

and others were inside when they heard gunshots and realized that bullets were coming into the house from the front yard; the victim went to confront defendant in the front yard with a gun; witnesses heard shots; the victim was seriously wounded when he returned to the house; each time he attempted to go outside another round was fired into the house; the firing from outside continued until law enforcement officers arrived. The underlying felony of discharging a firearm into occupied property began the moment defendant started firing shots into the residence and continued until police sirens were heard. Defendant's actions constituted a series of connected events forming one continuous transaction constituting one count of discharging a firearm into occupied property; the victim did not break the chain when he went outside to confront defendant.

**Am Jur 2d, Homicide § 46.**

**What constitutes termination of felony for purpose of felony-murder rule. 58 ALR3d 851.**

2. **Homicide § 503 (NCI4th)— first-degree murder—felony murder—discharging firearm into occupied property—instructions—temporal relationship between killing and felony**

The trial court did not err in its instructions in a first-degree murder prosecution which resulted in a felony murder conviction based on discharging a firearm into occupied property where the court's use of the words "while committing the felony of dis-charging a firearm into occupied property" was sufficiently broad to include the entire series of relevant events beginning with the original shooting into the house and continuing until the sirens were heard and the shooting ceased. The victim did not break the chain of events by going outside to defend his home.

**Am Jur 2d, Homicide § 46; Trial §§ 1077 et seq.**

**What constitutes termination of felony for purpose of felony-murder rule. 58 ALR3 851.**

3. **Criminal Law § 872 (NCI4th)— first-degree murder—felony murder—jury's request for further instructions—no error**

The trial court did not err in a first-degree murder prosecu-tion which resulted in a felony murder conviction where defend-ant contended that the court had disavowed its authority to satis-

fy the jury's request for an explanation of felony murder, but the jury was not asking for written instructions as defendant contended and the court reinstructed the jury as requested. When the jury later asked another question concerning the temporal relationship between the killing and the underlying felony, the trial court determined that the instruction as given adequately explained the law and twice offered to charge the jury again on the law pertaining to felony murder.

**Am Jur 2d, Trial §§ 1109, 1110.**

**4. Homicide §§ 612, 707 (NCI4th)— first-degree murder—instructions—self-defense**

The trial court did not err in a first-degree murder prosecution by instructing the jury that it could return a verdict of voluntary manslaughter for imperfect self-defense only if defendant reasonably believed it was necessary to kill in self-defense; moreover, there was no plain error in the voluntary manslaughter instruction because, in finding defendant guilty solely of first-degree murder based on felony murder, the jury specifically rejected premeditated and deliberate murder, second-degree murder, and voluntary manslaughter.

**Am Jur 2d, Homicide §§ 519 et seq.**

**Homicide: modern status of rules as to burden and quantum of proof to show self-defense. 43 ALR3d 221.**

**5. Evidence and Witnesses § 256 (NCI4th)— first-degree murder—victim's possession of sawed-off shotgun—irrelevant**

The trial court did not err in a first-degree murder prosecution which resulted in a felony murder conviction by sustaining the State's objection to portions of defendant's cross-examination of a prosecution witness concerning the illegality of the deceased's possession of a sawed-off shotgun. Although defendant argues that the evidence would have established self-defense, previous testimony disclosed that the victim had not brought this weapon out of the bedroom and that the sawed-off shotgun was not involved in the fatal shooting. Furthermore, defendant was convicted solely under the felony murder rule; self-defense is not an available defense to felony murder except in special circumstances not present here.

**Am Jur 2d, Evidence §§ 307 et seq.**

**6. Criminal Law § 1340 (NCI4th)— first-degree murder— felony murder—discharging a firearm into occupied property—judgment for discharging firearm not arrested— error**

The trial court erred by imposing judgment on defendant's conviction for discharging a firearm into occupied property where that crime was the underlying felony for a felony murder conviction.

**Am Jur 2d, Criminal Law §§ 598, 599; Homicide § 46.**

Justice FYRE concurs in the result.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing sentence of life imprisonment entered by Guice, J., at the 20 January 1992 Criminal Session of Superior Court, Catawba County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for discharging a firearm into occupied property was allowed 13 July 1993. Heard in the Supreme Court 15 March 1994.

*Michael F. Easley, Attorney General, by Clarence J. DelForge, III, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant was charged in indictments, proper in form, with the first-degree murder of Calvin Lineberger and discharging a firearm into occupied property. The case was tried capitally on the basis of both premeditated and deliberate murder and felony murder. Defendant was convicted of first-degree murder under the felony-murder rule only and was found guilty as charged on the remaining offense. Following a sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended life imprisonment. Upon this recommendation defendant was sentenced to life imprisonment for the murder conviction and a concurrent term of ten years' imprisonment for the discharging of a firearm into occupied property conviction.

The State presented evidence at trial tending to show that defendant and his girlfriend, Pamela Weaver, had a strained and violent relationship. On 26 December 1990 Pamela left defendant and moved in with her sister, Ronzylie Brown, and her sister's boyfriend, Calvin Lineberger, on Edna Street in Catawba, North Carolina. Two days later, on 28 December 1990, defendant went to the Lineberger residence around midday to persuade Pamela to come home with him. When she failed to respond to his pleas, defendant became angry and bit her on the forehead. As Pamela broke away and ran down the hallway, defendant threw a knife at her which stuck in the bedroom door as she closed it behind her. Lineberger came out of the bathroom, retrieved the knife, and told defendant to leave.

Defendant returned to the residence on several occasions throughout the day but Pamela refused to see him. On the last such visit, Lineberger went outside to tell defendant that he could not come inside the house to talk with Pamela. Lineberger went back inside and sat at the kitchen table with Ronzylie, Pamela, and Christopher Brown, Ronzylie's oldest son. A few moments later they heard gunshots and realized that bullets were coming into the house from the front yard. Everyone immediately dropped to the floor while Lineberger went to retrieve his guns from the bedroom. He returned with a .357 blue steel revolver and a .22 caliber rifle which he handed to Ronzylie. Christopher also had a rifle. With his gun in hand, Lineberger decided to confront defendant in the front yard.

Witnesses then heard as many as six loud shots from Lineberger's .357 pistol, quickly followed by numerous smaller shots. When Lineberger returned to the kitchen, he was seriously wounded. He was able to reload the pistol with Christopher's help but each time he attempted to go back outside another round of shots was fired into the house. The firing from outside continued until law enforcement officers arrived in response to a neighbor's telephone call for assistance. Defendant ran from the premises when he heard the approaching sirens.

When Detective Broome of the Catawba County Sheriff's Department arrived at defendant's mother's house a few moments later, he found defendant standing on the front porch with his arms above his head stating, "I give up." After being informed of his *Miranda* rights, defendant stated that Lineberger started the entire incident. Detective Broome again advised defendant of his rights when they reached the Catawba County Justice Center and defendant signed a written

waiver of rights form. When told Lineberger was in surgery, defendant stated that "the m—— f—— better die because he will go through this again only he will be dead." Calvin Lineberger died on 1 January 1991.

Dr. Joseph Vogel, a regional state pathologist with the North Carolina Medical Examiner's office, testified as an expert in forensic pathology. He performed the autopsy on 2 January 1991 at Catawba Memorial Hospital. He noted that the victim had received two gunshot wounds: one in the right upper abdomen injuring the liver, stomach, and bowels and one in the right buttock. The cause of death was severe bowel infection secondary to an abdominal gunshot wound.

Although defendant's weapon was never found, the bullets taken from the victim's body were .22 caliber as were the numerous shell casings found in the front yard. Defendant did not testify and presented no evidence.

[1] In his first assignment of error, defendant contends the trial court erred in denying his motions to dismiss the charge of felony murder predicated on discharging a firearm into occupied property. The trial court instructed the jury to find defendant guilty of felony murder if it found that defendant killed Lineberger *while* he was committing the underlying felony of discharging a firearm into occupied property. In essence, defendant contends that since the State's own evidence shows that defendant shot Lineberger *outside* the house, the evidence fails to support felony murder based on the court's instructions. We disagree.

The law in North Carolina is that

[a] killing is committed in the perpetration or attempted perpetration of a felony for purposes of the felony murder rule where there is no break in the chain of events leading from the initial felony to the act causing death, so that the homicide is part of a series of incidents which form one continuous transaction.

*State v. Hutchins*, 303 N.C. 321, 345, 279 S.E.2d 788, 803 (1981). Here, the underlying felony of discharging a firearm into occupied property began the moment defendant started firing shots into the Lineberger residence and continued until police sirens were heard and defendant ceased firing. Defendant's actions constituted not several unrelated events but a series of connected events forming one continuous transaction constituting one count of discharging a firearm into occupied

property. Lineberger did not break the chain of events when he went outside to confront defendant.

[2] Defendant additionally contends that the trial court erred in failing to instruct the jury more broadly regarding the temporal relationship between the killing and the underlying felony. Defendant argues that the court expressly conditioned a verdict of guilty of felony murder on a finding that the killing occurred while defendant was firing into the house. Relying on the plain meaning of "while," defendant contends the State's evidence contradicts any argument that defendant killed Lineberger at the same time he was firing into the occupied residence. Defendant's argument must fail.

"[T]o support convictions for a felony offense and related felony murder, all that is required is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction." *State v. Cook*, 334 N.C. 564, 574-75, 433 S.E.2d 730, 735-36 (1993). The trial court's use of the words "while committing the felony of discharging a firearm into occupied property" was sufficiently broad to include the entire series of relevant events beginning with the original shooting into the house and continuing until the sirens were heard and the shooting ceased. There is no question but that the house was occupied during this time frame. Witnesses testified that gunshots were being fired into the home before the confrontation in the yard between the two men began and continued well after Lineberger had been shot and went back inside the house. Lineberger did not break the chain of events by going outside to defend his home. *See State v. Fields*, 315 N.C. 191, 337 S.E.2d 518 (1985). This assignment of error is overruled.

[3] In his next assignment of error, defendant contends the trial court erred by twice disavowing its authority to satisfy the jury's request for an explanation of the law on the felony-murder rule concerning the temporal link between the killing and the underlying felony. Defendant first argues the trial court erred in disavowing its authority to give written instructions to the jury. After the jury began its deliberations, the jury foreperson sent a note to the trial court. The trial judge informed counsel of the content of the note as follows:

Here is the question that the jury. Provide the law as charged to the jury on the first degree murder, second degree murder and voluntary manslaughter, all of the points under each item that must be proven. Now if they are asking for the instructions to take to the jury room, the court will deny that request and I will

instruct the court officer that if they have any further question they may write that out. Any comments.

When the jury returned to the courtroom, the trial judge asked the foreperson to explain the question and the foreperson responded:

We would like to have explained to us again the law as to first degree murder, second degree and voluntary manslaughter and also on the point that we need to find to find the defendant guilty.

The trial court then inquired if the jury wished him to go over all the instructions again, and receiving an affirmative answer, the trial judge repeated the requested instructions. From this colloquy the record is clear that the jurors were not asking for written instructions. Defendant now asserts that the trial court erred in refusing to present the jury with written instructions as allowed by *State v. McAvoy*, 331 N.C. 583, 591, 417 S.E.2d 489, 494 (1992). The trial court did not err as it reinstructed the jury as requested.

Furthermore, while we held in *McAvoy* that the trial court has the authority to provide the jury with written instructions upon request, we noted that:

The trial court repeated the requested instructions in their entirety, thereby complying with the essence of the jury's request. Defendant gives no reason, and we find none, why giving the requested instructions orally did not serve the same purpose as written instructions.

331 N.C. at 591, 417 S.E.2d at 495.

Later during its deliberations, the jury informed the court it had another question. When the jury had been summoned back into the courtroom, the foreman informed the court that "[w]e have a question concerning if a death results from a shooting that took place outside of the dwelling after it was shot into, is that considered as a result of the shooting in the house since that had already occurred before." The foreman declined the court's offer to repeat the instructions on felony murder. The judge then stated that "it would not be property [sic] for me to say anything further as to this question. The law that applies to this case is what I have given to you in the instructions in the list of things that the state has to prove and I will give it to you again." The foreman again refused the court's offer.

We note first that defendant has waived this portion of his assignment of error in that he failed to object to this portion of the jury

charge at trial and failed to argue it on appeal as plain error. N.C. R. App. P. 10(b)(2), (c)(4). However, in an effort to prevent manifest injustice to defendant, we will review the merits of defendant's argument. N.C. R. App. P. 2.

The trial court bears the burden of "declar[ing] and explain[ing] the law arising on the evidence relating to each substantial feature of the case." *State v. Everette,* 284 N.C. 81, 87, 199 S.E.2d 462, 467 (1973). Defendant does not contend that the court improperly instructed the jury on the law governing the temporal relationship between the killing and the underlying felony; rather, defendant contends the court failed in its duty to give additional instructions to the jury in response to a clearly articulated request for an explanation of the requisite temporal relationship.

N.C.G.S. § 15A-1234(a) provides:

(a) After the jury retires for deliberation, the judge may give appropriate additional instructions to:

(1) Respond to an inquiry of the jury made in open court; or

(2) Correct or withdraw an erroneous instruction; or

(3) Clarify an ambiguous instruction; or

(4) Instruct the jury on a point of law which should have been covered in the original instructions.

N.C.G.S. § 15A-1234(a) (1988). However, the trial court is not required to repeat instructions which have been previously given absent an error in the charge. *State v. Hockett,* 309 N.C. 794, 800, 309 S.E.2d 249, 252 (1983). "[N]eedless repetition is undesirable and has been held erroneous on occasion." *State v. Dawson,* 278 N.C. 351, 365, 180 S.E.2d 140, 149 (1971). Furthermore, the trial court "shall not be required to . . . explain the application of the law to the evidence." N.C.G.S. § 15A-1232 (1988).

In *State v. Weddington,* 329 N.C. 202, 404 S.E.2d 671 (1991), the trial court refused to specifically address the jury's question of whether the intent to kill essential to the offense of first-degree murder must have existed at the time of the act which caused the death. The trial court determined that repeating the pertinent portions of the instructions in their entirety would answer the jury's question. In holding that defendant's trial was free from prejudicial error, this Court stated:

The trial court is in the best position to determine whether further instructions will be needed to prevent an undue emphasis being placed on a particular portion of its instructions. The trial court is not required to frame its instructions with any greater particularity than is necessary to enable the jury to understand and apply the law to the evidence bearing upon the elements of the crime charged.

*Weddington*, 329 N.C. at 210, 404 S.E.2d at 677 (citations omitted).

In *Hockett*, the trial court refused to answer the jury's questions concerning the differences between first- and second-degree sexual offense and between armed robbery and common law robbery. In ordering a new trial, we stated that "the trial court should have at least reviewed the elements of the offenses if it was not going to directly answer the [jury's] question as defense counsel had requested." *Hockett*, 309 N.C. at 802, 309 S.E.2d at 253.

In the present case the trial court determined that the instruction as given adequately explained the law defining felony murder and twice offered to charge them again on this subject. The foreman refused both offers. Assuming *arguendo* that the trial court erred in refusing to further clarify the temporal relationship between the killing and the underlying felony, we hold that based on *Weddington* and *Hockett*, the error was harmless since the court twice offered to reinstruct the jury on the law pertaining to felony murder. This assignment of error is overruled.

[4] In his next assignment of error, defendant contends the trial court committed plain error by instructing the jury that it could return a verdict of voluntary manslaughter for imperfect self-defense only if defendant reasonably believed it was necessary to kill in self-defense. Defendant concedes that this issue has consistently been decided contrary to his position. *State v. Rose*, 335 N.C. 301, 330, 439 S.E.2d 518, 534 (1994), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 883 (1994); *State v. McAvoy*, 331 N.C. 583, 601, 417 S.E.2d 489, 500-01 (1992); *State v. Maynor*, 331 N.C. 695, 700, 417 S.E.2d 453, 456 (1992). We decline defendant's request to revisit our earlier, well-reasoned holdings in *Rose*, *McAvoy*, and *Maynor*. Moreover, any error in the voluntary manslaughter instruction fails to rise to plain error since in finding defendant guilty solely of first-degree murder based on the felony-murder rule, the jury specifically rejected premeditated and deliberate murder, second-degree murder, and voluntary manslaugh-

ter. *Rose*, 335 N.C. at 331, 439 S.E.2d at 534. This assignment of error is overruled.

**[5]** Defendant next argues that the trial court erred by sustaining the State's objection to portions of defendant's cross-examination of a prosecution witness concerning the illegality of the deceased's possession of a sawed-off shotgun. Relying on *State v. McAvoy*, 331 N.C. 583, 417 S.E.2d 489, defendant contends that evidence of Lineberger's knowledge of the criminal prohibition in N.C.G.S. § 14-288.8(c)(3) against the possession of a sawed-off shotgun was relevant to the question of whether Lineberger was the aggressor in the entire episode or, at the very least, the aggressor in the fatal exchange of gunfire outside the house. Thus, defendant argues the evidence, if admitted, would have established either perfect or imperfect self-defense.

In *McAvoy*, the defendant was a bartender who illegally possessed a pistol while on duty in the bar and who shot and killed the victim with the pistol. At issue in the case was whether or not defendant killed the victim in self-defense. This Court held that Rule 611(b)[1] of the North Carolina Rules of Evidence permitted the prosecutor to cross-examine the bar manager concerning the illegality of possessing a gun in a bar pursuant to N.C.G.S. § 14-269.3. The Court explained that

> [e]vidence that defendant carried the gun into the club in violation of criminal law was relevant to the manner in which he possessed the gun at the time of the killing in the present case and, thus, "of consequence to the determination of the action." Therefore, it was "relevant evidence" tending to establish facts surrounding the killing of the victim by defendant and a proper subject to explore during cross-examination.

*McAvoy*, 331 N.C. at 593, 417 S.E.2d at 496 (quoting N.C.G.S. § 8C-1, Rule 401 (1988)).

In the present case, the victim, Calvin Lineberger, owned numerous guns, including a sawed-off shotgun. During the cross-examination of Ronzylie Brown, defense counsel attempted to ask the following questions:

> Q.    [Defense Counsel] How long did he have it [the sawed off shotgun].

---

1. N.C.G.S. § 8C-1, Rule 611(b) (1992) provides that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility."

A. [Mrs. Brown] He had it for a while because it had been pawn[ed] to him.

Q. Pawn[ed] to him.

A. Yes.

Q. How long had he had it.

A. I guess about four years.

Q. Four years lying under the mattress?

A. Yes.

Q. Did you ever have any conversation with him about that gun being illegal or against the law being sawed off?

MR. PARKER: [Prosecutor] Objection.

COURT: Sustained.

Q. Did you know it was illegal to own a gun like that?

MR. PARKER: Objection.

COURT: Sustained.

Q. Did you ever see him shooting it.

A. No, never.

Q. Did you ever hear him shooting it.

A. No.

Previous testimony disclosed that Lineberger had not brought this weapon out of the bedroom and that the sawed-off shotgun was not involved in the fatal shooting. Thus, the critical distinction between the pistol in *McAvoy* and the shotgun here is that in *McAvoy* the pistol was the murder weapon, and the victim was killed in the bar into which defendant illegally carried the gun. Here, the fact that the victim kept under his mattress an illegal weapon which had nothing to do with the events leading up to his death is irrelevant. The trial court properly sustained the State's objection to defendant's cross-examination on this subject. Furthermore, since defendant was convicted of first-degree murder solely under the felony-murder rule, whether Lineberger was or was not the aggressor when he went outside to confront defendant would have no effect on the outcome of this case. Except in special circumstances not present under the facts

of this case, self-defense is not an available defense to felony murder. *State v. Bell*, 338 N.C. 363, 450 S.E.2d 710 (1994). This assignment of error is without merit.

**[6]** Defendant next contends that the trial court erred in imposing judgment on defendant's conviction for discharging a firearm into occupied property since this crime was the underlying felony used for the conviction of defendant for the felony murder of Calvin Lineberger. We agree and arrest judgment on this conviction accordingly.

This Court has consistently held that

> [w]hen a defendant is convicted of first degree murder pursuant to the felony murder rule, and a verdict of guilty is also returned on the underlying felony, this latter conviction provides no basis for an additional sentence. It merges into the murder conviction, and any judgment imposed on the underlying felony must be arrested.

*State v. Silhan*, 302 N.C. 223, 261-62, 275 S.E.2d 450, 477 (1981). *See also State v. Weeks*, 322 N.C. 152, 367 S.E.2d 895 (1988); *State v. Fields*, 315 N.C. 191, 337 S.E.2d 518; *State v. Squire*, 292 N.C. 494, 234 S.E.2d 563, *cert. denied*, 434 U.S. 998, 54 L. Ed. 2d 493 (1977); *State v. Thompson*, 280 N.C. 202, 185 S.E.2d 666 (1972).

In the present case the jury specifically found defendant not guilty of first-degree murder on the basis of malice, premeditation, and deliberation but guilty of first-degree murder under the felony-murder rule. Because the predicate felony was discharging a firearm into occupied property, the trial court could not impose an additional ten-year sentence for this conviction. Therefore, judgment on the discharging a firearm into occupied property conviction must be arrested.[2]

Finally, in a related assignment of error, defendant argues that the trial court erred in imposing the maximum sentence for discharging a firearm into occupied property without complying with the requisite procedure of weighing aggravating and mitigating factors. This argument is moot since we have arrested judgment on the separate judgment for discharging a firearm into occupied property.

---

2. We note, however, that there will be no change in the duration of defendant's sentence since the trial court ran defendant's ten-year sentence for discharging a firearm into occupied property concurrently with his life sentence for felony murder.

NO. 91CRS626—FIRST-DEGREE MURDER: NO ERROR.

NO. 91CRS2782—DISCHARGING A FIREARM INTO OCCUPIED PROPERTY: JUDGMENT ARRESTED.

Justice FRYE concurs in the result.