BRYANT, Judge.
 

 *741
 
 Tarrence Shakil Hazel ("defendant") appeals from judgments entered upon jury verdicts finding him guilty of robbery with a firearm and first-degree murder under the felony murder rule. We uphold the verdict of the jury and find no error in the judgment of the trial court.
 

 On 13 April 2012, Marquice Antone shot and killed his uncle by marriage, Keith Gachette, inside Gachette's Columbus County home. Defendant and Kenneth Williams were also present during the shooting. Kenneth Williams testified for the State pursuant to a plea bargain, wherein he pled guilty to accessory after the fact to murder. Williams testified that he, Antone, and defendant had planned to break into the Gachette home and steal Gachette's guns and jewelry on 12 April 2013, provided no one was home. Gachette was a gun collector who owned a number of rifles and handguns. Defendant, who was eighteen years old and had a car, drove Antone and Williams, who were each sixteen years
 
 *742
 
 old, to the Gachette home, where they were all admitted by Gachette. After this visit, Williams testified that the group then went to Williams's home and talked. According to Williams, Antone asked defendant if they could " go back over there tomorrow and try again" to break in and steal Gachette's guns. Williams and defendant agreed.
 

 On 13 April 2013, Williams and Antone walked to defendant's house to get a ride to the Gachette residence. According to Williams, Antone told them that if Gachette was at home, Antone would simply ask his uncle for money, even though the real purpose of the visit was to "get guns." When the group arrived at the Gachette residence, all three were admitted by Gachette, and they all took seats at the dining room table. After about fifteen minutes of conversation, Williams heard Antone ask Gachette if he had any gun oil, at which point Williams looked up to see Antone pull out a gun and fire it. The shot hit Gachette's computer, which was in the living room. Gachette ordered the group to leave. Antone fired again, shooting Gachette in the head, then walked over and fired at Gachette a third time. Antone ordered Williams and defendant to come to him as he stood over Gachette's body, then told them to take the guns. Williams took two rifles from the gun rack and put them in the trunk of defendant's car.
 

 Defendant also took a gun handed to him by Antone while Antone took additional guns from a gun rack in the house. According to Williams, when defendant left the house, he was carrying a pink bag, later determined to contain jewelry, in addition to a handgun. Antone came outside with a rifle and a handgun. The group left the scene in defendant's car and drove toward Bolton.
 

 After arriving in Bolton, they went to a park. According to Williams, Antone had defendant call an individual named Jamal. Antone wanted to know if Jamal could hold the stolen property for them. Jamal apparently refused. After this phone call, Williams testified defendant drove off in his car by himself, leaving Williams and Antone in the park. Defendant returned about ten minutes later and said that he could not find anybody "to hold the guns."
 

 *173
 
 Defendant testified that during this ten-minute interval he drove to Brianna Webb's house. While he was talking to Webb, she saw the pink pouch in the back seat of defendant's car. When she asked to have it, defendant let her take it. Defendant then returned to the park where Antone and Williams were waiting. Defendant testified that he told Williams and Antone that "this stuff [the guns] has to come out of my car."
 

 *743
 
 They all got back into defendant's car and drove off, ending up on a dirt road near Lake Waccamaw. They attempted to hide the guns under an abandoned house but were interrupted by an approaching car. They left that location, heading toward the town of Hallsboro, still in possession of one rifle and some handguns. Antone asked Williams if he wanted the handguns, but Williams declined. Antone said he was going to throw the guns out the window, but Williams did not know if he actually did so.
 

 The three went to Williams's home, where Antone asked Williams for a duffel bag. Antone hid the remaining rifle inside the duffel bag and left Williams's home, having friends pick him up. Defendant then left as well.
 

 Defendant was indicted on charges of first-degree murder and robbery with a dangerous weapon on 9 May 2012, and arrested shortly thereafter. Defendant was tried during a late July 2014 term of court in Columbus County, the Honorable James Gregory Bell, judge presiding.
 

 At trial, once the jurors began deliberations, they requested a written copy of the trial court's instructions. The trial court provided the jury with written instructions on "all the substantive charges." Later that day, the jury sent a note containing the following question: "To clarify ... can this defendant be found guilty of the robbery charge and then found not guilty of the murder charge?" Defense counsel indicated that the question should be answered "yes," and the prosecutor thought it should be answered "no." After the parties were given an opportunity to research the issue, and after the trial court had conducted independent legal research as well, the trial court indicated it would tell the jury to read the instructions and would not answer the question yes or no. Defense counsel responded:
 

 [Defense counsel]: I'm not denying the Court has the discretion to do that, I'm not suggesting that you must answer the question, but I think that is a matter the Appellate Courts of North Carolina have clearly said is within your discretion. But technically the answer is yes.
 

 ...
 

 THE COURT: All right.... I'm not going to answer yes or no, I am going to give you the written copies of the instructions, they can go back and read the instructions. Anybody want to say anything about that?
 

 *744
 
 The following day, the jurors, using separate verdict sheets, convicted defendant of robbery with a firearm and first-degree murder based on the felony murder rule. Defendant appeals.
 

 _________________________
 

 On appeal, defendant raises only one issue: whether the trial court committed prejudicial error in failing to answer "yes" or "no" to the following question from the jury: "Can this defendant be found guilty of the robbery charge and then found not guilty of the murder charge?" We conclude the trial court acted within its discretion.
 

 This Court recognizes that "the trial court is in the best position to determine whether further additional instruction will aid or confuse the jury in its deliberations, or if further instruction will prevent or cause in itself an undue emphasis being placed on a particular portion of the court's instructions."
 
 State v. Prevette,
 

 317 N.C. 148
 
 , 164,
 
 345 S.E.2d 159
 
 , 169 (1986). Thus, whether to give additional instructions to the jury is within the trial court's discretion:
 

 (a) After the jury retires for deliberation, the judge
 
 may
 
 give appropriate additional instructions to:
 

 (1) Respond to an inquiry of the jury made in open court; or
 

 (2) Correct or withdraw an erroneous instruction;
 

 (3) Clarify an ambiguous instruction; or
 

 (4) Instruct the jury on a point of law which should have been covered in the original instructions.
 

 *174
 
 (b) At any time the judge gives additional instructions, he may also give or repeat other instructions to avoid giving undue prominence to the additional instructions.
 

 (c) Before the judge gives additional instructions, he must inform the parties generally of the instructions he intends to give and afford them an opportunity to be heard.
 

 N.C. Gen.Stat. § 15A-1234 (2013) (emphasis added). "[T]he trial court is not required to repeat instructions which have been previously given absent an error in the charge."
 
 State v. Moore,
 

 339 N.C. 456
 
 , 464,
 
 451 S.E.2d 232
 
 , 236 (1994).
 

 *745
 
 Defendant argues that the trial court's response to the jury's question should either have been (1) a "yes" response, as requested by defendant, or (2) at least a response instructing the jury to consider each charge against defendant separately. Either of these responses, defendant argues, would have properly conveyed to the jury that its finding on the robbery charge did not automatically dictate the verdict on the murder charge. Defendant nonetheless conceded at trial that the trial court's choice of response was "a matter that the Appellate Courts of North Carolina have clearly said is within [the trial court's] discretion." Thus, the trial court's response instructing the jury to reread the instructions, without answering the specific question, was well within its discretion.
 

 Defendant cites
 
 State v. Bromfield,
 

 332 N.C. 24
 
 ,
 
 418 S.E.2d 491
 
 (1992), in support of his contention that the trial court erred. In
 
 Bromfield,
 
 the jury asked the trial court a question almost identical to the one asked in defendant's trial: " 'If [defendant is] found guilty of robbery with a dangerous weapon, must [the jury] automatically find him guilty of felony murder?' "
 

 Id.
 

 ,
 
 332 N.C. at 45
 
 ,
 
 418 S.E.2d at 503
 
 . After soliciting comment from both defense counsel and the prosecutor, the trial court clarified the instruction, stating that the jury was "to consider each case separately on its own merits.... You're to consider each count in each case separately, independently."
 
 Id.
 
 at 46,
 
 418 S.E.2d at 503
 
 . The North Carolina Supreme Court held that the trial court's choice to repeat the instructions substantially in accordance with defense counsel's suggestion "was carefully designed to prevent confusion by the jury."
 

 Id.
 

 Here, it is undisputed that the trial court correctly instructed the jury on the separate offenses of robbery with a firearm and first-degree murder in perpetration of a felony. Additionally, like the trial court in
 
 Bromfield,
 
 the trial court in the instant case solicited comment and advice from defense counsel and the prosecutor with regard to an appropriate response to the jury's question. In its discretion, the trial court then decided that it would instruct the jurors to reread their written copies of the instructions previously given and that the court would not answer "yes" or "no" to the jury's question.
 

 While the trial court here did not clarify the instructions by telling the jury to "treat each count separately," as the trial judge did in
 
 Bromfield,
 
 failure to do so in the instant case could not be error where the trial court has discretion in its response to the jury's request.
 
 See
 

 Prevette,
 

 317 N.C. at 164
 
 ,
 
 345 S.E.2d at 169
 
 . Further, the jury was handed separate and distinct verdict sheets with which they were to enter individual verdicts of either guilty or not guilty as to each charge. Therefore,
 
 *746
 
 the trial court's action in response to the jury's question was well within its discretion and proper as a matter of law.
 
 See
 
 id.
 

 Defendant's argument is overruled where: (1) it is undisputed that the trial court correctly instructed the jury on the separate offenses of robbery with a firearm and first-degree murder in perpetration of a felony; (2) the court properly responded to the jury's question by instructing the jury to reread the written instructions previously given to them; and (3) the jury was given separate verdict sheets for each count that allowed them to select "not guilty" for each offense. Accordingly, defendant's trial was free from error.
 

 NO ERROR.
 

 Judges TYSON and INMAN concur.