MURPHY, Judge.
 

 *829
 
 Michael Scaturro, Jr. ("Defendant") appeals from his convictions for felony hit and run and attaining habitual felon status. He was indicted for failing to remain at the scene of the crash in which he was involved. On appeal, he contends that the trial court erred by denying his motion to dismiss the felony hit and run charge on the grounds that the record did not contain sufficient evidence to show that he willfully and unlawfully failed to remain at the scene and, in the alternative, that his trial counsel provided him with constitutionally deficient representation by failing to preserve that error for appellate review. If the Court finds no error on that basis, Defendant instead argues he was denied his right to a unanimous jury verdict because the trial court's instructions permitted the jury to convict Defendant on the basis of either failure to remain or failure to return. Finally, in the alternative to his first two assignments of error, Defendant maintains that the trial court committed plain error by failing to instruct on an essential element of the offense-that a "willful" failure to remain or return is one "without justification or excuse." After careful consideration of Defendant's challenges to the trial court's judgments in light of the record and applicable law, we conclude that the trial court's judgments should be overturned.
 

 *830
 

 Background
 

 On 6 July 2013, Christopher Jamie Eric Fisher ("Fisher") left home on his bicycle to go to his friend's house. As he rode up Gordon Road and approached the Farrington Farms Road intersection, he noticed a truck waiting to turn onto Gordon Road from Farrington Farm Road. Rather than continuing straight on his route up Gordon Road and thereby crossing in front of the truck, Jamie turned right onto Farrington Farm Road, planning to make a U-turn around a median to get back onto Gordon Road, so as to allow the truck a clear path. As he made the U-turn, Defendant struck Fisher with his car. As a result, Fisher was thrown from his bicycle and the left side of his head, shoulder, and elbow hit the pavement as he skidded across the road. The fall nearly severed Fisher's left ear from his head, and he was left profusely bleeding. Defendant got out of his car and told Fisher, "You pulled out in front of me." Then, Defendant retrieved a rag
 
 *503
 
 from his car and gave it to Fisher to hold against his head.
 

 Fisher called 911, but as the emergency operator began speaking to him, Defendant told Fisher that he would take him to the hospital. Fisher decided to go with Defendant, and he reported that Defendant drove "like a maniac to get [him] to the hospital." Although at trial Fisher testified that Defendant refused to provide his name during the drive to the hospital, Fisher, in an earlier, statement said that Defendant did provide his name. Upon exiting his vehicle at Cape Fear Hospital, Fisher made note of Defendant's license plate number before Defendant drove away.
 

 After checking into the emergency room, Fisher was transferred to New Hanover Hospital where he underwent surgery to remove his torn ear. He has had to return to the hospital several times for additional surgeries as well.
 

 Around 4:45 p.m., Trooper Michael A. Kirk ("Trooper Kirk") of the North Carolina Highway Patrol was dispatched to the accident scene and arrived just as the fire department was clearing it. At the time, Fisher's bicycle was still lying in the yard just off the roadway. Defendant did not return to the accident scene during the 30 to 45 minutes Trooper Kirk remained to wait for a wrecker and mark pertinent evidence. Moreover, Trooper Kirk did not receive any calls informing him that Defendant attempted to contact him, the highway patrol, or any other police agency during his investigation of the scene.
 

 After completing his initial on-scene investigation, Trooper Kirk went to the Cape Fear Hospital upon receiving information from the New
 
 *831
 
 Hanover County Sheriff's Department that a possible collision victim was being treated there. While at the hospital, Trooper Kirk spoke with Fisher and his mother. Fisher reported being hit by a car with Defendant's license plate number. Trooper Kirk contacted another trooper and asked him to respond to the address to which the vehicle bearing that license plate number was registered. After spending approximately 10 minutes at the hospital, Trooper Kirk returned to the accident scene for another 30 to 45 minutes in order to complete his investigation. Once again, Defendant did not return to the scene during that period, and the trooper sent to his address was unable to locate him there.
 

 On 8 July 2013 Trooper Kirk located Defendant and confronted him about the accident. Defendant readily admitted to being involved, and Trooper Kirk arrested him. After being read his
 
 Miranda
 
 rights, Defendant initially stated he was willing to speak with law enforcement; however, upon placing two phone calls, he refused to discuss the accident further.
 

 On 23 September 2013, Defendant was indicted for one count of felony hit and run resulting in serious bodily injury in violation of N.C.G.S. § 20-166(a). Specifically, the indictment charged that Defendant "unlawfully, willfully, and feloniously did fail to remain at the scene" in which he was involved until law enforcement completed its investigation and authorized him to leave. He was also indicted for having attained habitual felon status. Beginning on 28 January 2015, a jury trial was held in New Hanover County Superior Court before the Honorable Phyllis Gorham. Defendant moved to dismiss the charge of felony failure hit and run at the close of the State's evidence and at the close of all of the evidence, arguing that the State had not met its burden beyond a reasonable doubt and that "there is no jury question as a matter of law." The trial court denied Defendant's motions.
 

 The trial court instructed the jury that in order to find Defendant guilty of the offense, the State must prove six things beyond a reasonable doubt:
 

 First, that the defendant was driving a vehicle.
 

 Second, that the vehicle was involved in a crash.
 

 Third, that a person suffered serious bodily injury in this crash. Serious bodily injury is bodily injury that creates or causes serious permanent disfigurement or permanent or protracted loss or impairment of the functions of any bodily member or organ.
 

 *504
 

 *832
 
 Fourth, that the defendant knew or reasonably should have known that the defendant was involved in a crash and that a person suffered serious bodily injury in this crash. A defendant's knowledge can be actual or implied. It may be inferred where the circumstances proven such as would lead the defendant to believe that the defendant has been in a crash which resulted in serious bodily injury to a person.
 

 Fifth, that the defendant, after stopping, did not remain at the scene of the crash until a law enforcement officer completed the investigation or authorized the defendant to leave. If a driver leaves the scene of a crash for the purpose of rendering the person injured in the crash reasonable assistance, including reasonable medical assistance, the driver must return to the scene of the crash within a reasonable period of time unless otherwise instructed by a law enforcement officer.
 

 Intent is a mental attitude seldom provable by direct evidence. It must ordinarily be inferred by circumstances from which it may be-it must ordinarily be proved by circumstances from which it may be inferred. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as such a reasonably prudent person would ordinarily draw therefrom.
 

 And, sixth, that the defendant's failure to remain at the scene of the crash was willful, that is intentional. I instruct you to apply the definition of intent given in element number five above.
 

 If you find from the evidence beyond a reasonable doubt that on about the alleged date the defendant was driving a vehicle which was involved in a crash, that a person suffered serious bodily injury in this crash, and that the defendant knew or reasonably should have known that the defendant was involved in a crash which resulted in serious bodily injury to a person and that the defendant intentionally failed to remain at the scene of the crash until a law enforcement officer completed the investigation and authorized the defendant to leave, it would be your duty to return a verdict of guilty of felonious hit and run with serious bodily injury. If you do not so find or have a reasonable
 
 *833
 
 doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.
 

 Defense counsel did not object to the instruction.
 

 On 29 January 2015, the jury found Defendant guilty of felony hit and run resulting in serious bodily injury. Defendant then stipulated to attaining habitual felon status and pleaded guilty pursuant to an information charging him with possession of heroin in case number 14 CRS 59132. The trial court sentenced Defendant on the hit and run charge as a habitual felon with a prior record level of II, imposing a presumptive range sentence of 67 to 93 months confinement. As to the possession charge, the trial court found that Defendant had a prior record level of III, but imposed an intermediate sentence in the mitigated range of 4 to 14 months confinement, which was suspended for 12 months, with a split sentence of 3 months confinement. The trial court terminated Defendant's probation upon completion of the split sentence.
 

 On 11 January 2016, Defendant petitioned this Court to issue a writ of certiorari to review the trial court's decision. On 26 January 2016, we allowed that petition.
 

 Analysis
 

 I.
 
 Alleged Fatal Variance in Hit and Run Indictment
 

 In his first assignment of error, Defendant argues that his motion to dismiss should have been granted because there was insufficient evidence to support the charge of hit and run based upon failure to remain. Specifically, he submits that his failure to remain at the scene was not willful or felonious because he was expressly permitted and excused pursuant to N.C.G.S. § 20-166(a) to leave the scene of the accident for the purpose of seeking medical treatment for Fisher. Instead, Defendant maintains that the State presented evidence of the charge of hit and run based upon his failure to return to the scene of the accident, an entirely separate crime, and thus there was a fatal variance between the indictment and the evidence
 
 *505
 
 submitted at trial. We do not reach Defendant's alleged fatal variance.
 

 "In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1) ;
 
 see also
 

 State v. Maness
 
 ,
 
 363 N.C. 261
 
 , 273,
 
 677 S.E.2d 796
 
 , 804 (2009),
 
 cert. denied
 
 ,
 
 559 U.S. 1052
 
 ,
 
 130 S.Ct. 2349
 
 ,
 
 176 L.Ed.2d 568
 
 (2010). In order to preserve a fatal variance argument for appellate review, a defendant
 
 *834
 
 must specifically state at trial that a fatal variance is the basis for his motion to dismiss.
 
 State v. Hooks
 
 , --- N.C.App. ----, ----,
 
 777 S.E.2d 133
 
 , 139 (2015) ;
 
 State v. Curry
 
 ,
 
 203 N.C.App. 375
 
 , 384,
 
 692 S.E.2d 129
 
 , 137,
 
 disc. review denied
 
 ,
 
 364 N.C. 437
 
 ,
 
 702 S.E.2d 496
 
 (2010).
 

 In the instant case, at trial Defendant based his motion to dismiss solely on insufficiency of the evidence, and a review of the trial transcript reveals that Defendant never alleged the existence of a fatal variance between the indictment and the jury instructions. In fact, when the trial court asked the parties if they had any additions, corrections, or comments as to the proposed jury instruction regarding Defendant's failure to return to the scene of the accident, which Defendant now alleges is a separate offense than that which was charged in the indictment, Defendant only argued that the jury should be instructed as to willfulness and never asserted fatal variance.
 

 Defendant argues for the first time on appeal that the trial court erred by denying his motion to dismiss due to a fatal variance between the indictment, charging failure to remain, and the State's proof at trial, demonstrating failure to return. However, Defendant has waived his right to appellate review of this issue because he failed to properly preserve it at trial.
 
 See
 

 Hooks
 
 , --- N.C.App. at ----,
 
 777 S.E.2d at
 
 139 ;
 
 see also
 

 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount" on appeal). Accordingly, we decline to address this issue. Moreover, although Defendant requests in the alternative that we review this issue pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure, we decline to suspend our rules in this case.
 

 II.
 
 Plain Error in Failing to Instruct as to Willfulness
 

 We next consider Defendant's argument that the trial court erred in failing to provide an instruction as to willfulness. According to Defendant, the evidence demonstrates that he only left the scene of the accident to take Fisher to the nearest hospital, as is permitted by the language of N.C.G.S. § 20-166(a) and (b), and therefore he did not willfully violate the statute. In response, the State's sole argument is that Defendant was not entitled to an instruction on willfulness because the statute does not permit a driver to leave the scene of an accident at all, even to obtain medical assistance. Defendant did not object to the instruction as given at trial, so we consider whether this instruction constitutes plain error.
 
 See
 
 N.C. R. App. P. 10(a)(4) ;
 
 see also
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 512,
 
 723 S.E.2d 326
 
 , 330 (2012).
 

 *835
 
 The plain error standard requires a defendant to "demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.' "
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (internal citation omitted) (quoting
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) ). "[P]lain error is to be applied cautiously and only in the exceptional case" in which the defendant is able to show that the error at issue is "one that seriously affects the fairness, integrity or public reputation of judicial proceedings."
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 (alteration, citation, and quotations omitted). "For plain error to be found, it must be probable, not just possible, that absent the instructional error the jury would have returned a different verdict."
 
 State v. Juarez
 
 ,
 
 369 N.C. 351
 
 , ----,
 
 794 S.E.2d 293
 
 , 300 (2016).
 

 *506
 
 In instructing the jury, it is well settled that "[t]he trial court has the duty to 'declare and explain the law arising on the evidence relating to each substantial feature of the case.' "
 
 State v. Snelling
 
 ,
 
 231 N.C.App. 676
 
 , 679,
 
 752 S.E.2d 739
 
 , 742 (2014) (quoting
 
 State v. Hockett
 
 ,
 
 309 N.C. 794
 
 , 800,
 
 309 S.E.2d 249
 
 , 252 (1983) );
 
 see also
 

 State v. Ramos
 
 ,
 
 363 N.C. 352
 
 , 355,
 
 678 S.E.2d 224
 
 , 226 (2009) ("A trial court must instruct the jury on every essential element of an offense" (brackets, citation, and quotations omitted));
 
 State v. Harris
 
 ,
 
 306 N.C. 724
 
 , 727,
 
 295 S.E.2d 391
 
 , 393 (1982) ("[A] judge has an obligation to fully instruct the jury on all substantial and essential features of the case embraced within the issue and arising on the evidence");
 
 State v. Floyd
 
 ,
 
 241 N.C. 298
 
 , 300,
 
 84 S.E.2d 915
 
 , 917 (1954) ("The defendant had a substantial legal right to have the judge to declare and explain the law arising on this evidence of his presented to the jury."). A defendant's failure to request an instruction as to a substantial and essential feature of the case does not vitiate the trial court's affirmative duty.
 
 See
 

 State v. Morgan
 
 ,
 
 315 N.C. 626
 
 , 643,
 
 340 S.E.2d 84
 
 , 95 (1986).
 

 Section 20-166 of the North Carolina General Statutes under which Defendant was charged provides in pertinent part:
 

 (a) The driver of any vehicle who knows or reasonably should know:
 

 (1) That the vehicle which he or she is operating is involved in a crash; and
 

 (2) That the crash has resulted in serious bodily injury, as defined in G.S. 14-32.4, or death to any person;
 

 *836
 
 shall immediately stop his or her vehicle at the scene of the crash. The driver shall remain with the vehicle at the scene of the crash until a law-enforcement officer completes the investigation of the crash or authorizes the driver to leave and the vehicle to be removed, unless remaining at the scene places the driver or others at significant risk of injury.
 

 Prior to the completion of the investigation of the crash by a law enforcement officer, or the consent of the officer to leave, the driver may not facilitate, allow, or agree to the removal of the vehicle from the scene for any purpose other than to call for a law enforcement officer, to call for medical assistance or medical treatment as set forth in subsection (b) of this section, or to remove oneself or others from significant risk of injury. If the driver does leave for a reason permitted by this subsection, then the driver must return with the vehicle to the accident scene within a reasonable period of time, unless otherwise instructed by a law enforcement officer.
 
 A willful violation of this subsection shall be punished
 
 as a Class F felony.
 

 ....
 

 (b) In addition to complying with the requirements of subsection[ ] (a) ... the driver ... shall render to any person injured in such crash reasonable assistance, including the calling for medical assistance if it is apparent that such assistance is necessary or is requested by the injured person. A violation of this subsection is a Class 1 misdemeanor.
 

 (Emphasis added).
 

 The principles of statutory construction by which we are guided instruct that we are to interpret statutes in a manner which does not render any of its words superfluous and gives each word meaning.
 
 State v. Coffey
 
 ,
 
 336 N.C. 412
 
 , 417-18,
 
 444 S.E.2d 431
 
 , 434 (1994). It is significant, then, that N.C.G.S. § 20-166(a) penalizes only
 
 willful
 
 violations of the statute. As confirmation of this fact, this Court has confirmed that willfulness is an essential element of the offense of hit and run as provided by the statute.
 
 State v. Acklin
 
 ,
 
 71 N.C.App. 261
 
 , 264,
 
 321 S.E.2d 532
 
 , 534 (1984) (noting that one of "[t]he essential elements [is] ... that
 
 *837
 
 the defendant's failure to stop was wil[l]ful, that is, intentional and without justification or excuse" (citing N.C.G.S. § 20-166 )).
 

 Although the General Assembly did not define "willful" for purposes of hit and run, this Court has long recognized that " '[w]illful' is defined as 'the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law.' "
 
 Ramos
 
 , 363 N.C. at 355,
 
 678 S.E.2d at 226
 
 (quoting
 
 State v. Arnold
 
 ,
 
 264 N.C. 348
 
 , 349,
 
 141 S.E.2d 473
 
 , 474 (1965) (per curiam) (citations omitted)).
 

 *507
 
 It "means something more than an intention to commit the offense."
 
 Ramos
 
 , 363 N.C. at 355,
 
 678 S.E.2d at 226
 
 .
 

 We find persuasive support for this definition in the state's pattern jury instructions. N.C.P.I.-Crim. 271.50 provides specific instructions regarding the element of willfulness in regard to hit and run on the bases of both failure to stop and failure to remain. It states that the State must prove "that the defendant's failure to [stop the defendant's vehicle] [remain at the scene of the crash] was willful, that is intentional (and without justification or excuse.)" A footnote to that paragraph states, "7. If there is evidence of justification or excuse, the jury should be instructed accordingly."
 

 In the instant case, the trial court never instructed the jury that an act is willful if it is without justification or excuse, as set out in the pattern jury instructions. Instead, the trial court conflated willful acts with intentional ones. However, as was the case here, a defendant might leave the scene of an accident intentionally and still not "willfully" violate N.C.G.S. § 20-166(a) if his intentional departure was justified or with excuse. Therefore, the trial court's instruction was erroneous as it did not satisfy the requirement that the jury be instructed as to willfulness where, as here, that issue is an essential element of the offense and a "substantial feature" of the case.
 

 In turning to whether that error constitutes plain error, a close inspection of the record and trial transcript reflects that Defendant's sole defense to the charge of hit and run by failure to remain was that his departure from the accident site was authorized, and actually required, by statute as he left in an effort to get Fisher medical assistance. Further, to the extent Defendant failed to return to the scene, again Defendant's sole defense was willfulness-he was in an extremely emotional state, traumatized by having just been involved in an accident with someone who subsequently lost their ear, and did everything he could to aid Fisher before returning to his home. In this way, Defendant's entire defense was predicated on the argument that he neither willfully left the scene of the accident nor willfully failed to return to it.
 

 *838
 
 Furthermore, there is evidence in the record to support a conclusion that Defendant did not willfully violate the statute. Specifically, both Defendant and Fisher testified at length as to Defendant's decision to leave the scene to take Fisher to the nearest hospital instead of waiting for emergency responders upon witnessing Fisher covered in blood with "his ear ... com[ing] off in his hand" and believing "he was about to bleed to death." Additionally, Defendant explained that after dropping Fisher off at the hospital he remained shaking and in shock from the experience, but also believed he had done all that he could to help him, and therefore returned home. The trial court's failure to provide an instruction on willfulness, then, deprived Defendant of the gravamen of his basis for acquittal. Had he received the instruction, it is at least probable that a jury would have concluded that Defendant had a justification or excuse for leaving the scene and failing to return.
 

 We are mindful that it is the rare case in which a defendant on plain error review is able to demonstrate that an unpreserved instructional error warrants reversal. However, in conducting plain error review, we are required to examine the entire record to determine whether the error "had a probable impact on the jury's finding that the defendant was guilty."
 
 Lawrence
 
 ,
 
 365 N.C. at 518
 
 ,
 
 723 S.E.2d at 334
 
 . "In many cases, ... an examination of the entire record reveals overwhelming and uncontroverted evidence of guilt such that a defendant is unable to show the probability of a different outcome."
 
 State v. Coleman
 
 ,
 
 227 N.C.App. 354
 
 , 363,
 
 742 S.E.2d 346
 
 , 352,
 
 writ denied
 
 ,
 
 review denied
 
 ,
 
 367 N.C. 271
 
 ,
 
 752 S.E.2d 466
 
 (2013). In the case before us, the only controverted issue was whether Defendant willfully violated the statute by failing to remain at the scene or to return to it. Therefore, this is one of the rare cases in which the trial court's failure to give an additional instruction regarding the only controverted issue at trial-willfulness-had a probable impact on the jury verdict. Accordingly,
 
 *508
 
 we reverse Defendant's convictions and remand this matter for a new trial.
 
 [1]
 

 To prevent future confusion and danger, we also take this opportunity to address the State's argument that N.C.G.S. § 20-166 prohibits a driver from leaving the scene of an accident to obtain medical care for himself or others and instead only authorizes a driver to temporarily
 
 *839
 
 leave to in order to call for help. While it is true that subsection (a) instructs that a driver may not leave the scene of an accident "for any purpose other than to call for a law enforcement officer, to call for medical assistance or medical treatment," we do not read statutory subsections in isolation. Instead, statutes dealing with the same subject matter must be construed
 
 in pari materia
 
 and reconciled, if possible.
 
 See, e.g.,
 

 Elec. Supply Co. of Durham, Inc. v. Swain Elect. Co., Inc.
 
 ,
 
 328 N.C. 651
 
 , 656,
 
 403 S.E.2d 291
 
 , 294 (1991) (citing
 
 Great S. Media, Inc. v. McDowell Cty.
 
 ,
 
 304 N.C. 427
 
 , 430-31,
 
 284 S.E.2d 457
 
 , 461 (1981) ).
 

 Applying that principle here leads us to conclude that, even though N.C.G.S. § 20-166(a) instructs that drivers may only leave for the limited purpose of calling for aid, that authorization is expanded by N.C.G.S. § 20-166(b) 's requirement that drivers, among other things, "
 
 shall
 
 render to any person injured in such crash
 
 reasonable assistance
 
 , including the calling for medical assistance" permitted by subsection (a). (Emphasis added). The plain language of this provision indicates that a driver's obligation to an injured person permits him to take action including but not limited to that which is authorized by subsection (a). Accordingly, it is clear that taking a seriously injured individual to the hospital to receive medical treatment is not prohibited by the statute in the event that such assistance is reasonable under the circumstances. In fact, the violation of that directive is itself a Class 1 misdemeanor.
 

 Conclusion
 

 Defendant failed to assert and preserve his argument that a fatal variance existed between the indictment and the proof at trial. However, the trial court erroneously failed to instruct the jury on the element of willfulness contained in N.C.G.S. § 20-166(a). After examining the whole record, this meets the standard for plain error. Accordingly, we reverse Defendant's convictions and remand this matter for a new trial.
 

 REVERSED AND REMANDED.
 

 Judge CALABRIA concurs.
 

 Judge DIETZ concurs in result only.
 

 [1]
 

 Having concluded that Defendant is entitled to a new trial on the basis of the erroneous jury instruction, we need not address Defendant's alternative assignments of error-(1) whether Defendant received ineffective assistance of counsel at trial due to his attorney's failure to object to the alleged fatal variance; or (2) whether Defendant was deprived of his Sixth Amendment right to a unanimous jury verdict.